Indictment for a riot.
In this case Edward Croft was called as a witness for the defendants, and objected to for want of religious belief. It was proved by James Fountain, James Stevens and Daniel Stevens, that Croft had repeatedly denied his belief in a future state of rewards and punishments: that he disbelieved altogether in a future state of existence. He said that man was like the tree that falls; he goes to the dust and there is no more of him. The witness asked him if he did not believe in the existence of a God. He replied that by did not know whether there was a God or not.
Croft now asked to make a statement to the court in relation to his religious belief, which was objected to by the prosecuting attorney, on the ground that he was already discredited.
The Court asked him if he could prove by any other person the expression of any other opinions on the subject of responsibility in a future life, than those which had been testified to. He said he could not, but desired to make a statement. The court determined to hear him, saving the question as to the effect of his statement.
Mr. Croft. — I have always held my mind open to conviction on all subjects. I have read much on this; on both sides of the question. Whatever may have been my belief heretofore as to the existence of a God, I do now believe, from reading and reflection, that there was and is a supreme first cause; and will be a future state of existence, and of rewards and punishments. I think I have before expressed my change of opinion on this subject to others, but to no one present.
The court agreed that he was disqualified by the evidence; butdivided on the effect of his present statement, as to restoring him to competency.
The Chief Justice, (J. M. CLAYTON,) said: It is an important question as well as a delicate one, and has not been heretofore decided. The court is now divided upon it. My opinion is, that the witness is incompetent. He has been proved by testimony, that is, by the *Page 544 oath of competent and credible witnesses, to have, recently, entertained opinions which render him incompetent as a witness. With such opinions we cannot bind him by any form of oath we can put to him. The ordinary mode of attestation loses its sanction when applied to a man who does not believe that he can be punished hereafter for its violation. But the question is, what is this man's belief now? We can only know this by evidence; and the only legal evidence before us goes to disqualify him. He cannot be sworn for any purpose; shall we then take his simple assertion to qualify himself, after being disqualified by legal testimony. The case, might arise of a witness, the sole one to a deed, perfectly incompetent, and on that ground perfectly unworthy of credit; and yet on his own statement he might enable himself to be a witness. It is, therefore, on the ground that the statement of this witness is not to be regarded in any sense asevidence to rebut or remove the effect of testimony which disqualifies him, that I think him still incompetent. If he could prove by others the declaration of a change of opinions and views on this subject, I should incline to admit him as a competent witness. The question is not now of much consequence to the witness, after this public statement of his belief in a future state, but it is of great consequence to the administration of justice to preserve the sanctions of truth. A majority of the court are for rejecting the witness.a
a 1 Phil. Ev. 19, note a, the same point has been decided in the Supreme Court of Connecticut. In Curtis vs. Strong, 4 Day's Rep. 51;S. C. Swift's Ev. 48, it was made a question, whether the incompetency of a witness could be proved from his declarations out of court concerning his opinions and principles: the question was decided in the affirmative; and it was also decided that the witness could not be admitted to deny or explain in court, the declarations imputed to him.
The plea of autrefois acquit is founded on the principle that no man shall be placed in peril of legal penalties more than once upon the same accusation. 4 Co. Rep. 40, 43; Hawk. b. 2, c. 26, s. 63, 35, s. 1; 4 Bl. C. The plea of autrefois convict depends on the same principle, that no man shall be put in peril of punishment more than once for the same offence. This is the spirit of the law and has been since magna charta. It is also the spirit of the constitution of Delaware. It is the dictate of justice as well as of humanity.
To plead autrefois convict with effect, the crime must be the same
in fact for which the defendant was before convicted, or must benecessarily included in the former. A conviction on an indictment for a battery is a good bar to an indictment for the assault. A conviction for a riot is a bar to an indictment for the rout, and also for the unlawful assembly, which every riot necessarily includes. In all cases where a former conviction includes another offence the rule applies. *Page 547 
A conviction of murder is a bar to an indictment for the manslaughter; a conviction of petit treason will bar an indictment for the murder of the same person.
These pleas of autrefois convict and autrefois acquit are of a mixed nature, and consist partly of matter of record, and' partly of matter of fact. The matter of record is the former indictment, and the conviction or acquittal; the matter of fact is the averment of theidentity of the offence and person. (1 Hale, 255, 392.) It is settled, that the matter that the offence in the last indictment was included in a former conviction may be averred and proved by parol. "Anciently, says Hawkins, (Book 2, 370, c. 35, s. 4,) the judges often satisfied themselves of the truth of an averment that the offences in both indictments were the same, by witnesses, or by an inquest of office, without (even) putting it to a trial by jury upon an issue joined," c. 1 Johnson's Reports, 65.
If we may, on this conviction for a riot, punish these defendants for wilfully disturbing the religious meeting at which the riot occurred, then they cannot be convicted of the latter offence; for they are not only entitled to exemption from being twice punished for the last offence, but from even being put twice in peril of punishment.
Now we not only may, but we in duty must punish on the first conviction for the whole offence. We must consider all the circumstances in making up our judgment. The law rests upon our discretion, and that must be exercised so as to view all the disturbance, alarm and confusion in the religious meeting, caused by their conduct. We cannot overlook the place where, and the occasion on which, this riot occurred, in fixing the punishment for it. We cannot punish it as if it were a mere tavern brawl, or an uproar in the streets. It was a fact of extreme aggravation in the case that it broke up, in the most tumultuous and outrageous manner, an assemblage of religious people, quietly gathered together for the worship of God, according to their own conscience; and violated the constitutional right of every one of them to the free exercise of religious worship without molestation. The act of assembly which enacts the punishment for this riot, directs a fine "not less than twenty dollars, nor more than two hundred dollars, and imprisonment in the discretion of the court, for a term not exceeding six months, if the court shall deem
THE CIRCUMSTANCES to require such additional punishment."
Can it be said, then, that this second indictment does not put the defendants in peril of legal penalties already incurred by the first conviction? For upon that conviction the law makes it the duty of the court to mete out the punishment according to thecircumstances; *Page 548 
which circumstances are the groundwork and essence of this indictment for disturbing the religious worship.
The defendants were, accordingly acquitted on this indictment.